# CONSUMERS' BREWING COMPANY.

### *v.*

# BUSH.

EQUITY; LACHES; ADEQUATE REMEDY AT LAW.

Where the creditor of a lunatic filed his petition in the equity cause in which the lunatic had been adjudged such, against the committee of the lunatic to enforce the payment of the debt due the petitioner, and allowed two years to elapse without taking any further step, although an appearance was entered on behalf of the committee, during which time the lunatic died, a collector was appointed of his estate, the assets in the hands of the committee transferred to the collector and later by the collector to the executrix, all of such steps being taken with the knowledge and presumably the acquiescence of the debtor, a petition by the debtor to revive his former petition was *held* to have been properly de-

nied by the lower court, upon the ground that the appellant by his laches had abandoned his proceeding in equity and had become remitted to his remedy at law.

No. 1152.    Submitted February 18, 1902.    Decided April 1, 1902.

HEARING on an appeal by the petitioner from an order of the Supreme Court of the District of Columbia, dismissing a petition to revive a former petition, the object of which was to enforce the payment of a debt alleged to be due the petitioner from the estate of a lunatic.       *Affirmed.*

The COURT in its opinion stated the case as follows:

On October 4, 1894, in proceedings instituted for that purpose in the Supreme Court of the District of Columbia holding a special term for equity, one Henry Bush was adjudged to be a lunatic, and the appellee, Addie M. Bush, his wife, was appointed committee of his person and estate, after qualification entered upon the performance of her duties as such, and continued to act as such committee until the death of Henry Bush, on March 3, 1900. Previously to the time of his adjudication as an insane person, Henry Bush conducted a saloon and restaurant business in the city of Washington; and subsequently to the adjudication the appellee, Addie M. Bush, purporting to act as committee, continued to carry on the business for several years, the annual licenses therefor required by law being issued to her as committee. It does not appear that she ever applied to the court for authority to carry on this business as committee, or that the court ever gave any authorization to that effect. It would seem that she continued it on her own responsibility, but that she accounted to the court from time to time for the conduct of it and that her accounts were approved.

On March 28, 1899, she procured to have an order passed by the court authorizing her to sell and dispose of the business; and she did accordingly sell and dispose of it, and she seems to have accounted to the court for the proceeds of sale.

On March 29, 1899, which was the day following the date of the last-mentioned order, the appellant here, the Con-

sumers' Brewing Company, a body corporate of the State of Virginia, but doing business also in the District, filed its petition in the same cause, whereby it sought to recover the sum of $230 for goods sold and delivered by said company at various times between May 2 and November 1 of the year 1898, as stated in the petition, " to the said Henry Bush, by his committee, Addie M. Bush, for sale at his saloon." It was alleged that the proceeds of sale of these goods went to the support of the lunatic and his committee, and yet that the committee had refused to pay for them, and had no intention so to do, and that she was mismanaging the lunatic's estate.

Immediately on the filing of this petition an order was made by the court admitting the petitioner as a party to the cause, and directing a subpoena to be issued to the committee requiring her to answer the petition. Further than an entry of appearance for the committee as respondent, it is understood that no other or further proceedings were had upon this petition until May 14, 1901, upwards of two years afterwards, when it was sought to be revived by the proceedings in the same cause which are now before us.

In the meantime, on March 3, 1900, as already stated, Henry Bush died, without having recovered his reason, leaving only personal estate, and leaving a will executed before the adjudication of lunacy, of which his wife Addie M. Bush was appointed executrix. Apparently on account of some difficulty in the probate of this will, she was first appointed collector of the goods and chattels of the estate; but subsequently the will having been admitted to probate, letters testamentary thereon were issued to her, and she entered upon the performance of her duties as executrix, and, as it would seem, filed her inventory, in which she charged herself as executrix with the receipt of the assets of the estate from herself as collector. It may be presumed that, as collector, she had charged herself with the receipt of the assets from herself as committee; although this appears rather by inference than by direct statement in the record before us. It seems to be conceded in the briefs, filed by the parties.

On May 14, 1901, the same Consumers' Brewing Company filed another petition in the same equity cause, whereby it was sought to revive the previous petition of March 29, 1899, and the whole equity suit, so far as necessary, against Addie M. Bush, as executrix, to have an accounting from her both as committee and executrix, and to enforce the payment of the sum of $230, claimed in the original petition, with interest thereon from November 1, 1898. In this petition for revivor the allegations of the original petition were substantially repeated; and it was further stated that the business conducted by the committee constituted part of the personal estate of Henry Bush; that the committee had from time to time accounted to the court for her receipts and disbursements in and about the said business; that her expenditures and all and singular her acts in carrying on said business as such committee had been sanctioned and ratified by the court; that in her second report to the court, filed on April 15, 1899, the committee had expressly admitted the liability of the estate of Henry Bush for the petitioner's claim; that Henry Bush had died, as already stated, on March 3, 1900; that he had left a will; that Addie M. Bush had first been appointed collector of his estate, and that she had afterwards received letters testamentary in pursuance of the will; that, at the time of filing this petition, she was in the performance of her duties as executrix; that, on January 16, 1901, the petitioner had duly proved its claim in the office of the register of wills; that the executrix had declined to recognize the liability of the estate of Henry Bush for the said claim; and that, according to the petitioner's information and belief, the said Addie M. Bush was wholly insolvent.

To this petition for revivor a demurrer was filed on behalf of the respondent, Addie M. Bush, upon the ground that the petitioner's suit was not the subject of revivor, that the court of equity was without jurisdiction in the premises, and that the petitioner had an adequate remedy at law. The demurrer was sustained by the court; and both the original petition and the petition for revivor were dismissed, without prejudice, however, to the petitioner to proceed further, as it

might be advised.   From the order of dismissal the present appeal has been prosecuted.

*Mr. Lorenzo A. Bailey* for the appellant:

1. While it is true that the death of a lunatic determines the office of the committee, and that the chancellor will not entertain the claims of creditors filed thereafter in the lunacy proceedings, but will leave the estate to be administered by the personal representative, yet it is otherwise as to the petition of a creditor filed during the lifetime of the lunatic, and upon such a petition, the jurisdiction having attached is not lost by reason of the subsequent death of the lunatic, but the court may thereafter order payment of the debt. Shelford on Lunatics, p. 359, citing 12 Ves. 384; 2 Dick. 552.

Jurisdiction in equity being once acquired on equitable grounds will continue for the purpose of administering complete relief between the parties.   *Hopkins* v. *Grimshaw,* 165 U. S. 342, 358.

And in such case complete relief will be administered, though it be such relief as would properly come from a court of law.   *Palmer* v. *Fleming,* 1 App. D. C. 528.

2. The former petition and the proceedings thereon constituted, in effect, a suit or action against the lunatic, clearly within the jurisdiction of the chancellor under the Maryland Act 1785, Ch. 72, Sec. 6, and subject to revivor under chapter 80, section 1, of that act, or under equity rule 50 of ·the Supreme Court of the District of Columbia.   Abert's Comp., pp. 83, 457.

3. In *Boarman's Case,* 2 Bland Ch. 89, the court said there may be circumstances in which a next of kin or creditor may file a bill for administration of a lunatic's estate after his death, citing *Wigg* v. *Tyler,* 2 Dick. 552; Shelford on Lunatics, 213.

The circumstances of this case are surely such as to justify the court of equity in entertaining the petitioner's claim.   The petitioner, after furnishing the merchandise for the benefit

of the lunatic and his estate, having done so in good faith, relying upon the fact that the court had sanctioned the action of the committee in continuing the lunatic's business, should not be refused the aid of the court.

The appellee has not finally accounted as committee. Until she has done so she cannot say she is beyond the reach of the court which placed her in charge of the business and property of the lunatic, and which, in such final accounting, may and should require payment out of the assets now in her hands, either as former committee or as present executrix, for merchandise which she required to sustain the business and the proceeds of which became part of the assets for which she remains accountable.

This rule is stated in Alex. Ch. Pr. 238, that upon the death of the lunatic the accounts of the committee are to be finally settled and "the fund in hand may be applied to the satisfaction of demands arising out of the proceedings or recognized in their progress." The claim of the appellant is such a demand. It arose out of the proceedings and was recognized in their progress.

*Mr. Joseph A. Burkart* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

The assignments of error on behalf of the appellant are to the effect, (1) That the court was in error in holding that the death of the lunatic terminated the jurisdiction of the court as to the matters involved in the appellant's original petition; and (2) That the court was in error in holding that the former petition was not the subject of revivor. And under these assignments of error it is argued principally, that, while the death of a lunatic determines the office of the committee and the court of equity will not entertain claims thereafter filed in the proceedings wherein the adjudication of lunacy was had, yet the jurisdiction remains to adjudicate such claims as had been filed in the cause before the death of the lunatic; and that, therefore, the petitioner's suit may

properly be revived against the executrix in the present instance.

It is not apparent from the record before us whether there was any formal order or decree of the court discharging the committee in this case, and directing her to turn over the assets of the estate to herself as executrix. If there had been such final order or decree, it is very clear that the committee could no longer be held liable to the petitioner upon its claim; for such order or decree, with the transfer of the assets in pursuance of it, would necessarily have terminated the whole litigation, and would have carried with it and disposed of all incidental proceedings in the cause. After such final order or decree it would not have been competent for the court to go back and seek to take up and adjudicate some incidental matter which, either through design or by inadvertence, may not have received express or formal adjudication in the decree or previously thereto — unless, indeed, as sometimes happens, such incidental matter had been duly reserved for further consideration. For it is the nature and the essence of a final decree to terminate the litigation, and to leave nothing undisposed of in the suit.

But it does not appear in the proceedings before us that there has been any final order or decree of the court discharging the committee, or ratifying a final accounting by her, which might be regarded as the equivalent of a discharge; although it is stated in the petition for a revivor that the committee had accounted to the court from time to time for her receipts and disbursements in and about the business of the estate, and that such expenditures, and all and singular her acts in carrying on said business as such committee had been sanctioned and ratified by the court. In the brief filed on behalf of the appellant it is said that " the appellee has not finally accounted as committee;" but we find no basis for this statement in the appellant's petition to revive. The fact should have been distinctly averred in that petition, if it was sought to rely upon it; for it is an important fact in the case.

But assuming that there was no final order or decree in the cause discharging the committee, and no final account filed

by the committee and ratified by the court, and no action whatever of the court in the premises, yet, when there has been a lapse of upwards of two years between the closing out and sale of the business of the lunatic, in which the liability to the appellant is claimed to have been incurred, and the date of this petition for a revivor, when nearly fourteen months have elapsed since the death of the lunatic, and no step whatever has been taken in the interval by the appellant to enforce its claim, although in the meantime a collector for the estate has been appointed and it is to be presumed that the committee has turned over the assets to the collector, and the collector also has settled her accounts and turned over the same assets to the executrix, and all this has been done with the knowledge and presumably with the acquiescence of the appellant, we cannot regard it as required by any rule of equity that the committee, after so divesting herself of the assets, should be recalled to account for them to the appellant. By its inaction under the circumstances the appellant must be presumed to have acquiesced in the discharge of the committee and in the transfer of the assets by her; and by such acquiescence it has precluded itself from further litigation of its claim in the equity proceeding. For in order that the equity proceeding should be available, there must be a fund under the control of the court to respond to the demand. It is not sufficient that the appellant has a petition pending to enforce its claim. It is the possession of a fund out of which the claim may lawfully be satisfied, and the jurisdiction of equity over that fund that give the court the right to adjudicate the claim. When without any reservation of right the petitioner acquiesces in the transfer of the fund beyond the jurisdiction of the court, the right of adjudication of the claim is gone. A court of equity does not sit to adjudicate claims cognizable at common law, but to administer equitable relief; and that equitable relief in the present instance is dependent upon its possession and control of the estate of the lunatic.

The proceeding on behalf of the appellant seems to be based to some extent on the theory that the executrix may be

summoned into a court of equity equally as into a court of common law to revive and defend or prosecute a suit which has been technically abated by death; and it is undoubtedly true that in proper cases this may be done. But when a suit in equity not only has been abated by death, but likewise has been effectively terminated by the relinquishment and transfer of the fund upon which the litigation wholly depended, it is difficult to see upon what principle the executor or administrator can be cited into the court of equity in such manner as to affect the fund in his hands for which he is responsible to another and a wholly distinct tribunal, and which he took without any liability to the court of equity. If there is a just claim against that fund, the law has pointed out the method by which it is to be enforced; and this is not usually by recourse to equity.

Of course, it is of no consequence, in contemplation of law, that in this case the committee, the collector, and the executrix are all one and the same person. The rule must be the same as though they were entirely different.

We must hold that, on account of the long delay of the appellant in prosecuting its claim in the court of equity, and in view of its acquiescence in the virtual discharge of the committee and transfer of the estate to the executrix, the appellant abandoned its proceeding in equity and became remitted to its remedy at common law and under the statute.

The order appealed from dismissing the appellant's petition must, therefore, be *affirmed, with costs. And it is so ordered.*

[Mr. Chief Justice HAGNER, of the Supreme Court of the District of Columbia, sat with the court in the hearing and determination of this case, in the absence of Mr. Chief Justice ALVEY.— REPORTER.]